UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LESLIE HERNANDEZ NIEVES,<br><br>Plaintiff,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>Defendants. | Case No. 25-cv-06921-LB<br><br>**PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 7 |

### INTRODUCTION

Petitioner Leslie Hernandez Nieves is an asylum seeker from Mexico who entered the United States on May 23, 2024. After her release on her own recognizance under 8 U.S.C. § 1226, and after attending her ICE check-ins and immigration-court hearings without incident, immigration agents arrested her on August 15, 2025, following a routine court appearance. She petitioned for habeas relief and moved for a temporary restraining order (TRO), asserting that her detention violated her substantive and procedural due-process rights under the Fifth Amendment to the U.S. Constitution.[1] The court issued a TRO and now grants a preliminary injunction, enjoining the respondents from re-detaining the petitioner without notice and a pre-deprivation hearing.

---

[1] Pet. – ECF No. 1; Mot. – ECF No. 7. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 25-cv-06921-LB

# STATEMENT

The petitioner entered the United States from Mexico on May 23, 2024. On May 24, 2024, the Department of Homeland Security (DHS) issued her a Form I-200, Warrant for Arrest of Alien, stating that she was "liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act," codified at 8 U.S.C. § 1226.[2] That day, immigration officials released her on her own recognizance "[i]n accordance with section 236," for "humanitarian reasons and a lack of detention space," pending her removal proceedings, and with a notice to appear in immigration court. She admitted that she illegally crossed the border and did not have a fear of persecution or torture if returned to Mexico.[3] She has no criminal history.[4] She has attended her immigration-court hearings and ICE check-ins and applied for asylum in January 2025.[5]

On August 15, 2025, at a routine hearing in San Francisco Immigration Court, the government orally moved to dismiss the petitioner's removal proceedings because it had determined that she was subject to expedited-removal proceedings under 8 U.S.C. § 1225(b).[6] The immigration judge did not grant the motion, instead gave the petitioner ten days to respond, and set a merits hearing on her asylum application for February 29, 2028. When she left the courtroom, DHS agents arrested her.[7] After she was detained, despite her request, she did not receive medication for her kidney condition, causing significant pain.[8]

The petitioner filed a habeas petition and moved for a TRO and a preliminary injunction.[9] The court granted the TRO on August 17, 2025, and set a schedule for the preliminary-injunction

---

[2] Warrant, Ex. 1A to Abad Decl. – ECF No. 17-1 at 9.

[3] Pet. – ECF No. 1 at 12 (¶ 48); Order of Release, Ex. 3 to Abad Decl. – ECF No. 17-1 at 15; Form I-213, Ex. 4 to Abad Decl. – ECF No. 17-1 at 18.

[4] Form I-213, Ex. 4 to Abad Decl. – ECF No. 17-1 at 20.

[5] Pet. – ECF No. 1 at 12 (¶¶ 50–51).

[6] Abad Decl. – ECF No. 17-1 at 2 (¶ 8).

[7] Pet. – ECF No. 1 at 2 (¶¶ 2–3).

[8] According to the arrest report, the petitioner "stated she does not have any medical issues and is not on any medication." Form I-213, Ex. 4 to Abad Decl. – ECF No. 17-1 at 20. The petitioner does not recall being asked about her medical condition but has suffered from the disorder since childhood. Hernandez Nieves Decl. – ECF No. 18-1 at 2–3 (¶¶ 7–11).

[9] Pet. – ECF No. 1; Mot. – ECF No. 7.

motion.[10] The government released the petitioner that day.[11] The court held a hearing on August 27, 2025. All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[12]

## STATUTORY FRAMEWORK

The Immigration and Nationality Act defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival)." 8 U.S.C. § 1225(a)(1) (cleaned up); *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Under Section 212(a) of the Act, 8 U.S.C. § 1182(a), certain classes of noncitizens are inadmissible, and thus ineligible to be admitted to the United States, including those "present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). A noncitizen who is present in the United States but has not been admitted "is treated as an applicant for admission." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (cleaned up).

Applicants for admission, including those present without being admitted or paroled, may be removed from the United States by, among other ways, removal proceedings before an Immigration Judge under 8 U.S.C. § 1229a or expedited removal under § 1225(b)(1). 8 U.S.C. § 1182(a)(6). Section 1229a governs full removal proceedings initiated by a notice to appear and conducted before an immigration judge. "Expedited removal under § 1225(b)(1) applies in narrower, statutorily defined circumstances — typically to individuals apprehended at or near the border who lack valid entry documents or commit fraud upon entry — and allows for their removal without a hearing before an immigration judge, subject to limited exceptions."[13] DHS has discretion to pursue expedited removal under § 1225(b)(1) or § 1229a. *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 524 (BIA 2011). In this case, the government cites 8 U.S.C. § 1225(b)(1)–(2) to support mandatory detention. *Jennings*, 583 U.S. at 297 ("Read most naturally,

---

[10] Order – ECF No. 10.

[11] Status Report – ECF No. 11.

[12] Consents – ECF Nos. 4, 6.

[13] Opp'n – ECF No. 17 at 9 (cleaned up).

ORDER – No. 25-cv-06921-LB    3

§§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded.").

The next sections review detention under §§ 1225(b)(1), 1225(b)(2), and 1226(a).

### 1. Detention Under § 1225(b)(1)

Section 1225(b)(1) authorizes immigration officers to remove certain inadmissible noncitizens "from the United States without further hearing or review." It applies to "arriving aliens" and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Relevantly here, section 1225(b)(1) allows the expedited removal of any noncitizen "described in" § 1225(b)(1)(A)(iii)(II) — that is, any noncitizen not "admitted or paroled into the United States" and "physically present" for fewer than two years — who is inadmissible under § 1182(a)(7) at the time of "inspection." Among those categorized as inadmissible noncitizens are those, like the petitioner, without valid entry documents. 8 U.S.C. § 1182(a)(7). The Attorney General's or Secretary's authority to "designate" classes of noncitizens as subject to expedited removal is subject to her "sole and unreviewable discretion." *Id.* § 1225(b)(1)(A)(iii); *see Am. Immigr. Laws. Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000) (upholding the expedited removal statute).[14]

Expedited removal proceedings under Section 1225(b)(1) include procedures when a noncitizen indicates an intent to apply for asylum or expresses a fear of persecution, torture, or return to the noncitizen's country. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4).[15] The noncitizen is given a non-adversarial interview with an asylum officer, who determines whether

---

[14] In January 2025, the Secretary issued a notice that the scope of expedited removal would be "the fullest extent authorized by Congress." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). The notice enabled DHS "to exercise the full scope of its statutory authority to place in expedited removal, with limited exceptions, aliens determined to be inadmissible under [§ 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," and who were not otherwise covered by prior designations. *Id.* at 8139–40.

[15] Noncitizens must apply for asylum within one year of arriving in the U.S., 8 U.S.C. § 1158(a)(2)(B), unless the noncitizen demonstrates extraordinary circumstances justifying moving that deadline, *id.* § 1158(a)(2)(D).

the noncitizen has a "credible fear of persecution" or torture. 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B)(iii)(II), (iv)–(v); *see also* 8 C.F.R. § 208.30; *Thuraissigiam*, 591 U.S. at 109–11 (describing the credible-fear process). The noncitizen may pursue de novo review of that determination by an immigration judge. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. §§ 1003.42(d), 1208.30(g). During the credible-fear process, a noncitizen may consult with an attorney or representative and engage an interpreter. 8 C.F.R. § 208.30(d)(4)–(5). A noncitizen subject to these procedures "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If the asylum officer or immigration judge does not find a credible fear, the noncitizen is "removed from the United States without further hearing or review." *Id.* §§ 1225(b)(1)(B)(iii)(I), (b)(1)(C); 1252(a)(2)(A)(iii), (e)(2); 8 C.F.R. §§ 1003.42(f), 1208.30(g)(2)(iv)(A). If the asylum officer or immigration judge finds a credible fear, the noncitizen is generally placed in full removal proceedings under 8 U.S.C. § 1229a but remains subject to mandatory detention. *See* 8 C.F.R. § 208.30(f); 8 U.S.C.§ 1225(b)(1)(B)(iii)(IV).

### 2. Detention Under § 1225(b)(2)

Section 1225(b)(2) is a "broader," "catchall provision" that "applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. A noncitizen "who is an applicant for admission" is subject to mandatory detention pending full removal proceedings "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (such noncitizens must "be detained for a proceeding under section 1229a"); *Jennings*, 583 U.S. at 299; 8 C.F.R. § 235.3(b)(3) (a noncitizen placed into Section 1229a removal proceedings in lieu of expedited removal proceedings under Section 1225(b)(1) "shall be detained" pursuant to 8 U.S.C. § 1225(b)(2)). DHS has the sole discretion to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

### 3. Detention Under § 1226(a)

8 U.S.C. § 1226 applies to noncitizens who have been admitted to the United States but are deportable and subject to removal proceedings under § 1229a. Section 1226(a) provides for the arrest and detention of noncitizens "pending a decision on whether the alien is to be removed from the United States." Under § 1226(a), DHS may detain a noncitizen during her removal proceedings, release her on bond, or release her on conditional parole. Immigration officers can release a noncitizen if she demonstrates that she "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). A noncitizen can request a custody redetermination (i.e., a bond hearing) by an immigration judge at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19. At a custody redetermination, the immigration judge has broad discretion to continue detention or release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1); *In re Guerra*, 24 I&N Dec. 37, 39–40 (BIA 2006) (listing nine factors for immigration judges to consider).

The government has interpreted Section 1226(a) to be an available detention authority for noncitizens present without being admitted or paroled and placed directly in full removal proceedings under Section 1229a. *See, e.g.*, *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007). It now contends that this is incorrect and that § 1225 is the only applicable detention authority for all applicants for admission.[16]

## LEGAL STANDARD

The standards for a TRO and a preliminary injunction are identical. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Movants must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent an injunction, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The irreparable injury must be likely and immediate.

---

[16] Opp'n – ECF No. 17 at 11 (citing *Jennings*, 583 U.S. at 297).

*Id.* at 20–22. Alternatively, movants may show "serious questions going to the merits" and a balance of hardships that tips sharply in their favor, provided that the other elements are satisfied. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). When the government is a party, the balance of equities and public interest merge. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018). A preliminary injunction preserves the status quo and parties' rights until final judgment. *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

## ANALYSIS

### 1. Likelihood of Success on the Merits

Other courts in this district have determined that under similar circumstances, petitioners have shown a likelihood of success on the merits. *Pinchi v. Noem*, __ F. Supp. 3d __, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025); *Ramirez v. Calder*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *6 (N.D. Cal. Aug. 21, 2025).

The government placed the petitioner in full removal proceedings under 8 U.S.C. § 1229a and released her under § 1226(a), not § 1225(b).[17] *Ramirez*, 2025 WL 2419263, at *3 (similar conclusion on similar facts). The government contends that it can pursue mandatory detention under § 1225(b) at any time. But § 1225(b) generally involves a decision at the border.[18] Moreover, even when ICE has discretion to detain or release a noncitizen pending removal proceedings, after release, the petitioner has a protected liberty interest in remaining out of custody. *Id.* at *3–4; *Pinchi*, 2025 WL 2084921, at *3 (collecting cases). Due process requires a hearing before an immigration judge before re-detention. *Ramirez*, 2025 WL 2419263, at *5–6; *Pinchi*, 2025 WL 2084921, at *3–4 (collecting and analyzing cases).

To determine the process due, the court applies the three-part test in *Mathews v. Eldridge*, which requires the opportunity to be heard at a meaningful time and in a meaningful manner. 424 U.S. 319, 333 (1979); *Pinchi*, 2025 WL 2084921, at *3 & n.2 (citing *Rodriguez Diaz v. Garland*, 53

---

[17] Warrant, Ex. 1A to Abad Decl. – ECF No. 17-1 at 9; Order of Release, Ex. 3 to *id.* – ECF No. 17-1 at 15; Opp'n – ECF No. 17 at 13–14.

[18] Opp'n – ECF No. 17 at 9.

F.4th 1189, 1206 (9th Cir. 2022) (the Ninth Circuit has "regularly applied *Mathews* in due process challenges to removal proceedings")); *Ramirez*, 2025 WL 2419263, at *4; *Diaz v. Kaiser*, No. 3:25-cv-05071-TLT, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025). The *Mathews* factors are (1) the private interest affected by the government action, (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the government's "interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

First, the petitioner has a private interest in remaining out of custody. *Ramirez*, 2025 WL 2419263, at *6 (reaching this conclusion on similar facts); *Pinchi*, 2025 WL 2084921, at *4 (same). The court follows this analysis as persuasive without reiterating it.

Second, there is a significant risk of erroneous deprivation of the liberty interest without a pre-detention hearing. *Ramirez*, 2025 WL 2419263, at *6; *Pinchi*, 2025 WL 2084921, at *5.

Third, there is no countervailing government interest that supports conducting a bond hearing only after the petitioner has been detained. *Ramirez*, 2025 WL 2419263, at *6; *Pinchi*, 2025 WL 2084921, at *5–6. The petitioner has no criminal history and attends her ICE appointments and court hearings. Nothing suggests flight risk or danger to the community.

### 2. Other *Winter* Factors

The other *Winter* factors favor a preliminary injunction for the reasons set forth in *Pinchi* and *Ramirez*.[19] *Pinchi*, 2025 WL 2084921, at *6; *Ramirez*, 2025 WL 2419263, at *7–8.

---

[19] Because the petitioner is not detained and the respondents are enjoined from detaining her without a pre-detention hearing, the issue of transfer to another district is moot. The government conceded at the hearing that the court's jurisdiction was unaffected by any transfer, remarking that the petitioner here — and several petitioners in other cases — were transferred to another district following their detention and returned to this district after the TRO issued.

ORDER – No. 25-cv-06921-LB                    8

# CONCLUSION

The court grants the motion and enjoins the government from re-detaining the petitioner without a pre-detention bond hearing before a neutral immigration judge, which requires the government to demonstrate at that hearing by clear and convincing evidence that the petitioner is a flight risk or danger to the community and that no conditions other than detention would prevent the harms. *Pinchi*, 2025 WL 2084921, at *7.

**IT IS SO ORDERED.**

Dated: September 3, 2025

_____
LAUREL BEELER
United States Magistrate Judge